# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

**BEVERLY STELLY**                              **CASE NO.  6:20-CV-00570**

**VERSUS**                                      **JUDGE JUNEAU**

**ZYDUS PHARMACEUTICALS U S A INC**             **MAGISTRATE JUDGE WHITEHURST**

## REPORT AND RECOMMENDATION

Before the Court is the Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to F.R.C.P. Rule 12(b)(6) filed by Defendant Zydus Pharmaceuticals USA, Inc. (Rec. Doc. 43). Plaintiff, Beverly Stelly, opposed the Motion (Rec. Doc. 47), and Zydus replied (Rec. Doc. 52). The Motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court.  Considering the evidence, the law, and the arguments of the parties, and for the reasons explained below, the Court recommends that Zydus's Motion be granted in part and denied in part.

## Documents Considered

Ordinarily, in ruling on a F.R.C.P. Rule 12(b)(6) motion, the court is limited to the allegations of the complaint and any exhibits attached thereto; however, the court may also consider documents attached to the defendant's motion if they are

referenced in the complaint and central to the plaintiff's claims. *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007). The court is also permitted to take judicial notice of public records as well as facts which are not subject to reasonable dispute in that they are either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011). The Fifth Circuit has also sanctioned consideration of certain documents which were attached to the plaintiff's opposition, where no party questioned the authenticity of the documents and the documents are sufficiently referenced in the complaint. *Walch v. Adjutant Gen.'s Dep't of Texas*, 533 F.3d 289, 294 (5th Cir. 2008).

In this case, Zydus attached correspondence from the Food and Drug Administration (FDA), Office of Generic Drugs, approving Zydus's Abbreviated New Drug Application for amiodarone (the drug at issue in this suit), and Zydus's Prescribing Information and Medication Guide, which Zydus states was reviewed and approved by the FDA (Rec. Doc. 43-2). Plaintiff attached copies of certain applicable federal regulations and decisions from other courts. (Rec. Doc. 47-1 through 47-4). The Court finds that documents reflecting federal law and judicial proceedings are public record and therefore subject to consideration. The Court will also consider FDA correspondence as public record. See *Funk v. Stryker Corp.,* 631

F.3d 777, 783 (5th Cir. 2011) (approving the district court's consideration of FDA documents in ruling a Rule 12(b)(6) motion to dismiss). The Court will also consider Zydus's Medication Guide, to the extent applicable, because Plaintiff did not object to its use, and it was referenced throughout the Complaint. Hence, the following facts are derived from Plaintiff's Second Amended Complaint, the documents attached to her original Complaint (Rec. Doc. 1-1 through 1-3), and the documents attached to Plaintiff's and Zydus's pleadings.

## **Factual Background**

Plaintiff filed this diversity suit under 28 U.S.C. §1332 against Zydus, the manufacturer of the generic drug, amiodarone. She amended her Complaint twice, with Zydus now seeking to dismiss Plaintiff's Second Amendment Complaint.[1]

Amiodarone is a generic drug for Cordarone, first developed and manufactured by Wyeth. Plaintiff alleges that this drug was "a drug of last resort for patients suffering from documented recurrent life-threatening ventricular fibrillation and ventricular tachycardia." Plaintiff alleges that Wyeth nonetheless marketed the drug for "off label" uses as a "first line anti-arrhythmic therapy." (Rec. Doc. 41, ¶31-32). She states that, in response to serious injuries caused by the drug, the FDA

---

[1]     The Court shall refer to the Second Amended Complaint hereinafter as "the Complaint." Plaintiff's original Complaint and First Amended Complaint are at Rec. Doc. 1 and 13, respectively.

enacted a requirement that manufacturers provide a Medication Guide to go with the drug to patients. (Rec. Doc. 41, ¶37-40).

In 2008, Zydus received approval to manufacture and sell amiodarone, the generic version of Wyeth's drug. (Rec. Doc. 43-2; 41, ¶42). According to the Complaint, the FDA required Zydus to provide Medication Guides to patients which were identical to labels, warnings, and Medication Guides required of Wyeth's name brand drug. (Rec. Doc. 41, ¶42-44).

Plaintiff alleges that in February 2017, Dr. Dibbs prescribed her amiodarone for non-life-threatening atrial fibrillation. (Rec. Doc. 41, ¶ 48-49). In May 2019 she began to experience shortness of breath, wheezing, trouble breathing, coughing, *inter alia* and suffered damages after taking amiodarone. (Rec. Doc. 41, ¶56). Plaintiff alleges amiodarone was not approved for treatment of her particular condition, such that its use in this instance was an "off-label prescription." (Rec. Doc. 41, ¶49). She alleges that Zydus, like Wyeth, marketed the drug for such off-label uses, despite knowledge of injuries and death caused by the drug. She further alleges that Zydus failed to provide the required Medication Guide to her. (Rec. Doc. 41, ¶49). Had she known of the risks associated with taking amiodarone for her condition, she alleges she would not have taken the drug and sustained damages. (Rec. Doc. 41, ¶49 *et seq*). She asserts causes of action under the Louisiana Products Liability Act (LPLA) (First Cause of Action), negligence and gross negligence

4

(Second and Third Causes of Action), "off label marketing" (Fourth Cause of Action), failure to provide the Medication Guide (Fifth Cause of Action), and strict liability (Sixth Cause of Action). Zydus now seeks to dismiss these claims on the grounds that Plaintiff's claims are encompassed by the LPLA and therefore preempted by federal law and that Plaintiff has no cause of action for the alleged failure to provide a Medication Guide.

## <u>Law and Analysis</u>

When considering a motion to dismiss for failure to state a claim under F.R.C.P. Rule 12(b)(6), the district court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 375 (5th Cir.2004). The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). Conclusory allegations and unwarranted deductions of fact are not accepted as true, *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224 F.3d at

498. To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 U.S. at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).

## I. **Whether Plaintiff has stated a claim under the LPLA.**

Zydus first urges the Court to consider Plaintiff's claims for negligence and what it deems as "fraud and misrepresentation" as claims consumed by the LPLA, which, as further discussed below, are subject to federal preemption.

To maintain a successful products liability action under the LPLA, a plaintiff must establish four elements: (1) that the defendant is a manufacturer of the product; (2) that the plaintiff's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous;" and (4) that the plaintiff's damage arose from a reasonably anticipated use of the product by the plaintiff or someone else. *See* La. R.S. 9:2800.54(A). A product is "unreasonably dangerous" under the LPLA if the product meets at least one of the following criteria:

(1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;

6

(2) The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;

(3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57; or

(4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.

La. R.S. 9:2800.54(B).

"These statutory mechanisms for establishing that a product is unreasonably dangerous 'are predicated on principles of strict liability, negligence, or warranty.'" *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 260–61 (5th Cir. 2002), citing *Jefferson v. Lead Indus. Assoc.,* 930 F.Supp. 241, 245 (E.D.La.1996). "However, for causes of action arising after the effective date of the LPLA [1988], negligence, strict liability, and breach of express warranty are not available as theories of recovery against a manufacturer, independent from the LPLA." *Id.*

Plaintiff's express LPLA claim is for failure to warn under La. R.S. 9:2800.57. (Rec. Doc. 41, First Cause of Action, p. 24). Her Fourth Cause of Action (Off Label Marketing) and Fifth Cause of Action (Failure to Provide Medication Guide) likewise evoke failure to warn claims. See *Wells v. Wyeth Pharm., Inc*., No. A-16-CV-593-LY-ML, 2017 WL 8182749, at *3 (W.D. Tex. Apr. 12, 2017), *report and recommendation adopted,* No. 1:16-CV-593-LY, 2017 WL 8182839 (W.D. Tex. May 23, 2017). Her Second Cause of Action (negligence – Marketing and Sale for

7

Unreasonably Dangerous Uses), Third Cause of Action (Gross Negligence), and Sixth Cause of Action (Strict Liability Marketing Defect) are rooted in theories of negligence. Based on the foregoing established principles, Plaintiff's claims for negligence and strict liability, as well as any claims to the extent they sound in fraudulent misrepresentation, fail as a matter of law, because such claims do not exist separately from the LPLA.

Plaintiff maintains that her negligence claims constitute alleged negligent marketing and advertising, which she argues are not rooted in the LPLA. The Court disagrees and finds that the LPLA, and specifically La. R.S. 9:2800.52, precludes such separate claims. See e.g. *Grenier v. Med. Eng'g Corp.,* 99 F. Supp. 2d 759, 763 (W.D. La. 2000), *aff'd,* 243 F.3d 200 (5th Cir. 2001) (dismissing claims for strict liability, negligence, misrepresentation/fraud, and false advertising, *inter alia* as subsumed by the LPLA). Accordingly, the Court finds that Plaintiff's Second, Third, and Sixth Causes of Action should be dismissed.

## II.    **Whether Plaintiff's claims are preempted.**

Zydus next argues that Plaintiff's remaining claims for failure to warn, off-label marketing, and failure to provide Medication Guide are preempted by federal law. As discussed above, the Court considers these claims as LPLA failure to warn claims.

"[T]he doctrine of preemption is designed to foreclose a state cause of action that imposes different or additional requirements on a defendant when compared to federal requirements." *Hughes v. Bos. Sci. Corp.,* 631 F.3d 762, 771 (5th Cir. 2011).

> Preemption ultimately turns on congressional intent. Preemption may be express or implied. Under the implied preemption doctrines of field preemption and conflict preemption, a state claim is preempted where Congressional intent to preempt is inferred from the existence of a pervasive regulatory scheme or where state law conflicts with federal law or interferes with the achievement of federal objectives.

> *Witty v. Delta Air Lines, Inc.,* 366 F.3d 380, 384 (5th Cir. 2004) (internal quotations and citations omitted). See also *Elam v. Kansas City S. Ry. Co.,* 635 F.3d 796, 803 (5th Cir. 2011).

Following United States Supreme Court precedent in *PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011), the Fifth Circuit held that failure to warn claims against generic drug manufacturers brought under the LPLA are subject to federal preemption because of the "duty of sameness." *Johnson v. Teva Pharm. USA, Inc.,* 758 F.3d 605, 611 (5th Cir. 2014). Under the Hatch-Waxman Act, generic drugs can gain FDA approval simply by showing equivalence to a reference listed drug that has already been approved by the FDA. 21 U.S.C. § 355(j)(2)(A). A generic drug application must also "show that the [safety and efficacy] labeling proposed ... is the same as the

labeling approved for the [brand-name] drug." *Mensing*, 564 U.S. at 612–13. citing

§ 355(j)(2)(A)(v); see also § 355(j)(4)(G).[2]

> As a result, brand-name and generic drug manufacturers have different federal drug labeling duties. A brand-name manufacturer seeking new drug approval is responsible for the accuracy and adequacy of its label. A manufacturer seeking generic drug approval, on the other hand, is responsible for ensuring that its warning label is the same as the brand name's.

*Id.* (citations omitted).

Relying on *Mensing*, the Fifth Circuit further explained:

> In *Mensing,* the Supreme Court held a similar failure-to-warn claim against generic manufacturers of metoclopramide preempted by federal law. *Mensing,* 131 S.Ct. at 2572. The Court reasoned that federal law demands that "generic drug labels be the same at all times as the corresponding brand-name drug labels." *Id.* at 2578. This is known as the "duty of sameness." *Id.* at 2576. "This duty of sameness is overlaid with the agency's pronouncement that 'Dear Doctor' letters (or other forms of warnings) from a generic manufacturer constitute labeling." *Lashley v. Pfizer, Inc.,* 750 F.3d 470, 474 (5th Cir.2014). Because federal law requires generic drug labels to be the same as brand-name labels, any state-law duty that requires generic manufacturers to use safer labels conflicts with the federal "duty of sameness" and is preempted by federal law. *Mensing,* 131 S.Ct. at 2577, 2578 ("Where state and federal law 'directly conflict,' state law must give way."); *Morris v. PLIVA, Inc.,* 713 F.3d 774, 776–77 (5th Cir.2013) ( "Whether a warning is placed on the label on the bottle or in letters to distributors, any state law duty requiring generic manufacturers to act unilaterally in

---

[2]    The *Mensing* Court noted that its description was limited to analysis of the pre-2007 amendments to the statute; however, neither party in this case has argued or indicated that the substantive analysis would change based on the amendments. See also *Eckhardt v. Qualitest Pharm. Inc.*, 858 F. Supp. 2d 792, 794, fn. 4 (S.D. Tex. 2012), *aff'd*, 751 F.3d 674 (5th Cir. 2014); *Rojas v. Teva Pharm. USA, Inc.*, 920 F. Supp. 2d 772, 773 (S.D. Tex. 2013).

this area is preempted by federal law."); *see also Eckhardt v. Qualitest Pharm., Inc.,* 751 F.3d 674, 678 (5th Cir.2014); *Lashley,* 750 F.3d at 474.

*Johnson,* 758 F.3d at 611.

The court held that the plaintiff's failure to warn claim was preempted because it alleged that the generic warnings were inadequate, and the warnings could not be stronger as a matter of federal law. *Id*. The court further rejected the notion that claims that generic drug manufacturers failed to send "Dear Doctor" letters to providers advising of label changes could survive federal preemption. *Id*. Relying on precedent, the court reasoned that generic manufacturers were legally unable to send such communications because of the federal "sameness" requirements. *Id*. at 612. *Johnson* further foreclosed LPLA claims for design-defect and breach of express warranty on the grounds of preemption. *Id*. at 613-614. See also *Lashley v. Pfizer, Inc.,* 750 F.3d 470, 475 (5th Cir. 2014) and *Morris v. PLIVA, Inc.,* 713 F.3d 774, 777 (5th Cir. 2013) (both dismissing failure to warn claims as preempted).

*Mensing* and *Johnson* legally foreclose Plaintiff's failure to warn claims in this case to the extent those claims challenge Zydus's conduct vis-à-vis the contents of its labels and Medication Guide, since such materials must be the same as the name brand manufacturer. See also *Hughes v. Bos. Sci. Corp.,* 631 F.3d 762, 769 (5th Cir. 2011) (preempting state law failure to warn claims to the extent they would question the sufficiency of FDA-approved labeling, warnings, and instructions or

11

otherwise displace the FDA's exclusive role and expertise in this area and risk imposing inconsistent obligations on the defendant). However, Plaintiff contends that her claims are premised upon Zydus's alleged failure to provide the Medication Guide at all and Zydus's off-market promotion for a use of the drug not approved by the FDA, claims which she argues are parallel to federal law and thus not preempted.

The Fifth Circuit in *Hughes* held that state law failure to warn claims were only preempted to the extent they purport to impose liability despite the defendant's compliance with FDA regulations. *Id*. On the other hand, a claim based only on the defendant's failure to comply with FDA regulations is "parallel" to federal requirements and thus not preempted. *Id*. The court concluded that "claims for negligent failure to warn…are not preempted, provided that such claims are premised entirely on violation of the applicable federal requirements." *Id*. at 770.

## A. <u>Preemption of Failure to Provide Medication Guide Claim.</u>

Plaintiff alleges that Zydus failed to provide a Medication Guide to her, which she contends is an FDA requirement. Although the Court will address below whether FDA regulations required Zydus to provide the Medication Guide directly to the patient, for the immediate purposes, the Court finds that such claims should not be preempted. Plaintiff has not alleged that Zydus's Medication Guide was improper or inadequate, in which case *Mensing* and *Johnson* would impose preemption. Rather, Plaintiff has alleged that Zydus failed to comply with FDA requirements regarding

12

the Medication Guide, such that *Hughes* and the authority cited therein does not

mandate preemption.

### B. Preemption of Off-Label Marketing Claim.

With regard to Plaintiff's off label marketing claims, Zydus characterizes this

claim as an ordinary failure to warn claim subject to preemption because of the

sameness doctrine. The Fifth Circuit has not yet definitively addressed whether off

label promotion claims in the generic drug realm should be preempted. See e.g.

*Whitener v. Pliva, Inc.,* 606 F. App'x 762, 764 (5th Cir. 2015) (noting without

addressing the district court's unwillingness to conclude that off market promotion

claims fail as a matter of law). The Court is cognizant of several other district courts

which have concluded that off label marketing claims may not be preempted under

the duty of sameness (see e.g. *Wells*, *supra* and cases cited at fn. 5, relying on

*Whitener* as to not foreclose the availability of off market promotion claims).

Zydus cites several district court cases reaching the opposite result, finding

that off label marketing claims are subject to implied preemption. E.g. *Frei v. Taro

Pharm. U.S.A., Inc.,* 443 F. Supp. 3d 456, 468–69 (S.D.N.Y. 2020), citing *Bean v.

Upsher-Smith Pharm., Inc.,* 2017 WL 4348330, at *7 (D.S.C. Sept. 29, 2017)

("[C]laims respecting off-label use and promotion are subject to preemption under

*Buckman* as well 'because the duties [plaintiffs allege the manufacturer] breached

regarding off-label promotion exist solely under the FDCA."); *Perdue v. Wyeth*

*Pharms., Inc.,* 209 F. Supp. 3d 847, 852 (E.D.N.C. July 20, 2016) (dismissing claim for negligent off-label promotion because the claim was not premised on conduct that would give rise to recovery under state law in the absence of federal law).

Since its dicta in *Whitener* (upon which Plaintiff and her cited authorities rely), the Fifth Circuit explained implied preemption in the context of medical devices, which is governed by a similar FDA regulatory scheme, based upon the United States Supreme Court opinion in *Buckman Co. v. Plaintiffs Legal Comm.*:

> Implied preemption precludes state tort claims that "exist solely by virtue of" the federal regulatory scheme. *Buckman Co. v. Plaintiffs Legal Comm.*, 531 U.S. 341, 353, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001). Such claims—the paradigmatic one being fraud in connection with the FDA approval process—cannot be brought under state law because the FDA is the exclusive enforcer of its regulations. *Id.* at 347-50, 121 S.Ct. 1012. But implied preemption does not apply to common law claims that would reach the alleged wrong independent of the FDA process. *Id.* at 352, 121 S.Ct. 1012. As a breach of express warranty claim parallels, but does not exist solely because of, the FDA requirement—a warranty claim can be brought against products in all types of industries—implied preemption is not a problem.

*Wildman v. Medtronic, Inc.,* 874 F.3d 862, 868, fn. 6 (5th Cir. 2017).

*Wildman's* breach of express warranty claim that the manufacturer of a medical device expressed a warranty regarding the device's longevity, which it allegedly breached when the device failed, is contrasted to Plaintiff's off-label use claim in this case. As the *Wildman* court noted, a breach of express warranty claim

14

does not exist solely because of FDA requirements.[3] Here, in contrast, improper off label marketing (i.e. promoting a drug for something other than an FDA approved use) would not exist independently of the FDA regulations. Indeed, without the FDA regulations which mandate the specific purposes for which a drug may be approved and how a drug may be labeled, a plaintiff would be left with a vanilla claim for negligent or intentional failure to warn, claims which are expressly preempted under *Mensing* and *Johnson*.

In further support of this distinction, the *Wildman* court opined, "We see no reason why false representations that go beyond matters considered by the FDA should escape preemption only when they relate to off-label use." *Id*. at 868, fn. 5. A state should not be asked to decide whether an off-label use (and marketing thereof) is unsafe in light of the pervasive FDA regulatory scheme aimed at precisely such determinations. Thus, absent definitive Fifth Circuit guidance on the issue, the Court finds that Plaintiff's off-label marketing claims are impliedly preempted.

---

[3]    This Court notes that *Wildman's* conclusion that a breach of express warranty claim would *not* be preempted appears to conflict with *Johnson's* conclusion that a breach of express warranty claim *is* preempted; however, this difference may be reconciled based upon the nature of the claims. In *Wildman*, the court considered the Medical Device Amendments, which do not include a "duty of sameness" as imposed on generic drug manufacturers. Absent a similar federally imposed duty, medical device manufacturers are granted more leeway in proscribing warranties (albeit still subject to FDA regulation). Thus, a breach of express warranty claim against a medical device manufacturer could conceivably proceed under *Wildman*, while the same claim against a generic drug manufacturer could not under *Johnson*.

15

## III.    **Whether Plaintiff has a stated a claim for the Alleged Failure to provide a Medication Guide.**

Having found that Plaintiff's claim for failure to provide a Medication Guide should survive preemption, the Court turns to Zydus's argument that Plaintiff has nonetheless legally failed to state a claim based on the "learned intermediaries" defense.

The Fifth Circuit set forth the following framework for analyzing LPLA failure to warn claims involving the learned intermediary doctrine:

> [T]here is a two-prong test governing inadequate-warning claims under the LPLA when the learned intermediary doctrine is applicable. First, the plaintiff must show that the defendant failed to warn (or inadequately warned) the physician of a risk associated with the product that was not otherwise known to the physician. Second, the plaintiff must show that this failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury.

> *Stahl,* 283 F.3d at 265–66, citing *Willett v. Baxter Int'l, Inc.,* 929 F.2d 1094, 1098–99 (5th Cir. 1991).

The court further expounded the learned intermediary doctrine as follows:

> Under Louisiana law, "[t]he obligation to the consumer is fulfilled when the prescribing or treating physician is informed of any potential side effects or risks from the drug's use so that they may intelligently decide on its use and advise the patient." *McCarthy v. Danek Med., Inc.,* 65 F.Supp.2d 410, 413 (E.D.La.1999) (citing *Mikell,* 649 So.2d at 80). The premise underlying a failure-to-warn claim in the learned intermediary context is that the patient is claiming that the manufacturer failed to adequately warn the *treating physician.* The treating physician's knowledge is thus the focus of the inquiry. Accordingly, when a particular adverse effect is clearly and unambiguously mentioned in a warning label and the prescribing physician unequivocally states that he or she was adequately informed

16

of that risk by the warning, the manufacturer has satisfied its duty to warn under the learned intermediary doctrine.

*Id.* at 267–68 (emphasis in original).

Zydus argues it owed no obligation to provide warnings, in the form of a Medication Guide, directly to patients. Rather, its obligations were fulfilled by providing the appropriate literature to providers and pharmacists, the "learned intermediaries." Applicable federal regulations support Zydus's position. 21 C.F.R. §208.24 provides in pertinent part:

> (b) Each manufacturer who ships a container of drug product for which a Medication Guide is required under this part is responsible for ensuring that Medication Guides are available for distribution to patients by either:
>
> (1) Providing Medication Guides in sufficient numbers to distributors, packers, or authorized dispensers to permit the authorized dispenser to provide a Medication Guide to each patient receiving a prescription for the drug product; or
>
> (2) Providing the means to produce Medication Guides in sufficient numbers to distributors, packers, or authorized dispensers to permit the authorized dispenser to provide a Medication Guide to each patient receiving a prescription for the drug product.
>
> ***
>
> (e) Each authorized dispenser of a prescription drug product for which a Medication Guide is required under this part shall, when the product is dispensed to a patient (or to a patient's agent), provide a Medication Guide directly to each patient (or to the patient's agent) …

Zydus further relies on the impracticality of requiring drug manufacturers to ensure that Medication Guides are provided directly to patients, a notion which this Court finds persuasive. The regulations do not explicitly impose any duty for manufacturers to provide warning labels or Medication Guides *directly* to patients, and Plaintiff has not identified any legal source obligating drug manufacturers to do so. The existence of a duty is a question of law. *Bursztajn v. United States*, 367 F.3d 485, 489 (5th Cir. 2004). The Court finds that Zydus was not obligated to provide a Medication Guide directly to Plaintiff. Rather, its duty was to provide Medication Guides in sufficient numbers to distributors, packers, or authorized dispensers. The Court is not alone in this conclusion. See e.g. *Mitchell v. Wyeth Pharm., Inc.,* 356 F. Supp. 3d 634, 638 (W.D. Tex. 2018).

Plaintiff relies on one Louisiana appellate decision for the proposition that drug manufacturers are obligated to provided warnings directly to patients. In *Kampmann v. Mason*, the court opined, "We are not inclined to hold that a drug manufacturer fulfills its duty under the Louisiana Products Liability Law to use reasonable means to notify the user of the product by a mere warning to the wholesalers." *Kampmann v. Mason*, 05-423 (La. App. 5 Cir. 1/17/06), 921 So. 2d 1093, 1096. However, the *Kampmann* court rendered the foregoing statement in the context of the drug manufacturer's argument that it was not required to provide further warnings to *physicians*. *Id*. The court did not find that drug manufacturers

18

were obligated to provide warnings directly to patients. Thus, *Kampmann* does not change this Court's opinion.

Notwithstanding the Court's finding that Zydus was not legally obligated to provide a Medication Guide directly to patients, the Court must consider Plaintiff's allegations that Zydus failed to provide "adequate warnings to its distribution centers and distributors, who were then unable, in turn to transfer an adequate warning downstream to the Walmart and Super One Pharmacy's [sic] where Beverly Stelly filled her prescriptions…" (Rec. Doc. 41, ¶24). Accepting these allegations as true under F.R.C.P. Rule 12(b)(6), the Court must find that Plaintiff has stated a claim for failure to provide a Medication Guide, because this allegation purports that Zydus failed to comply with its duty to provide the learned intermediaries with the required Medication Guide. The adequacy of Zydus's distribution methods is a factual question which should be addressed after discovery. Thus, the Court recommends that Zydus's Motion be denied in this regard.

## <u>Conclusion</u>

For the reasons discussed herein, the Court recommends that Zydus Pharmaceuticals USA Inc.'s Motion to Dismiss (Rec. Doc. 43) be GRANTED IN PART AND DENIED IN PART. The Court recommends that the Motion be GRANTED insofar as it seeks to dismiss Plaintiff's claims for LPLA failure to warn (First Cause of Action), negligence (Second Cause of Action), gross negligence

19

(Third Cause of Action), off-label marketing (Fourth Cause of Action), and strict liability (Sixth Cause of Action). The Court recommends that the Motion be DENIED insofar as it seeks to dismiss Plaintiff's claims for failure to provide Medication Guide (Fifth Cause of Action).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 22nd day of February, 2021.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE